.EEE, J.
The settlement of Thomas J. Powell upon his wife of the 1st of January 1839, having been made when he was heavily indebted to the appellants, and as it would seem, insolvent, being of his whole estate except perhaps his interest in the King William land, which was already incumbered beyond its value by the deed of trust of 1836, and being upon a com sideration *not at all adequate in value to the property settled, must be held fraudulent and void as to creditors, except so far as it may be sustained for the purpose of rendering to the estate of Mrs. Powell a just equivalent for any interests which she may have surrendered on faith of it. We are therefore to enquire what were the interests, if any, so surrendered, and whether to the extent of those interests the settlement can be held good. And on making this enquiry we are at once met by the objection to the testimony of Thomas J. Powell.
Now it is a pervading principle of the law of evidence, that a husband or wife cannot be a witness in a cause, civil or criminal, in which the other is a party; not for that other, because the law considers them as one person, and their interests as identical; nor against that other, on grounds of public policy, because of the mutual confidence subsisting between them, and for fear of sowing distrust and dissensions and of giving occasion to perjury. Co. Litt. 6 b; Stark. Ev. part iv, p. 706; Barker v. Dixon, Cas. Temp. Hardwick 264; Bentley v. Cooke, 3 Doug. R. 422; Robin v. King, 2 Leigh 141, per Carr, J.; Stein v. Borman, 13 Peters’ R. 209; Fitch v. Hill, 11 Mass. 286.
The’rule prevails in equitjr as well as at law. Sedwick v. Watkins, 1 Ves. jr. R. 49; *621 Vowles v. Young, 13 Ves. R. 140; City Bank v. Bangs, 4 Paige’s R. 285. And if an estate be settled upon a wife for her sole and separate use, exempt from the debts or control of the husband, the legal identity of interests is regarded as still subsisting, and the husband will not be admitted to testify touching such separate estate, though there may be other parties in respect of whom he would be a competent witness. Windham v. Chetwynd, 1 Burr. R. 424; Davis v. Dinwoody, 4 T. R. 678; Langley v. Fisher, 5 Beav. R. 443; Snyder v. Snyder, 6 Binn. R. 483. So a husband is not a competent ^witness to prove the execution of a deed conveying propertj' for the benefit of his wife, for the purpose of' registration. Johnston v. Slater, 11 Gratt. 321. Nor is it material that the relation of husband and wife no longer exists when the party is offered as a witness, for the incompetency still remains though the marriage have been dissolved .by death or a divorce a vinculo matrimonii. Aveson v. Bord Kinnaird, 6 East’s R. 188; Coffin v. Jones, 13 Pick. R. 441; Stein v. Borman, 13 Peters’ R. 209; Ratcliff v. Wales, 1 Hill’s R. 63; McGuire v. Malony, 1 B. Monr. R. 224.
This case falls clearly within the rule ascertained by the cases cited. Thomas J. Powell is offered as a witness in support of the settlement made by him upon his wife. By his testimony it is sought to make out the consideration in favor of those now claiming under the wife. For this purpose he was clearly incompetent, nor was his competency restored (as we have seen) by the death of his wife. That he was not himself personally interested because he was bound for the college debt in any event, or that his interest was the same either ■way, does not vary the case. The authorities cited show that his incompetency does not rest upon the narrow ground of a personal and direct interest in himself but upon other and different principles. Indeed the incompetency has been maintained even in cases in which the husband’s interest was the other way. Thus in an action by the trustee for a wife against the sheriff for taking goods which were her separate property, under an execution against the husband, the husband was held to be an incompetent witness for the plaintiff (the wife being regarded as the real plaintiff), although he had an interest on the other side, in having his debt satisfied by the levy of the execution. Davis v. Dinwoody, 4 T. R. 678; see also Bland v. Ansley, 5 Bos. & Pul. 331.
The cases of Kevan v. Branch, 1 Gratt. 274, and Patteson v. Ford, 2 Gratt. 18 (cited by the counsel), do not touch the question here. They merely affirm the competency of the grantor as a witness for the grantees in an action by them as relators upon an indemnifying bond taken' when the property was levied upon under an execution against the grantor, in favor of other creditors of the common debtor. They decide that the party’s being such grantor does not of itself disqualify him as a witness; but do not reach the case vrhere the grantee is the wife of the grantor, and the parties interested are claiming under her.
Rejecting then the testimony of Thomas J. Powell, there is no evidence supporting or explaining the item of six hundred dollars claimed as part of the consideration of the settlement. It is true it is recited in the deed that this was part of Mrs. Ppwell’s private funds or “pin money” paid towards the purchase of the property settled. But the recitals in a post nuptial settlement as to the consideration, though admissible as against a person claiming under the settler, are not evidence against a creditor by whom the fairness and validity of the deed is assailed. Nor are declarations of the wife at the time of executing a deed, or at other times, that it was executed in consideration of a promise of the husband to'1 make a settlement upon her, or because he had made such a settlement, sufficient evidence of a contract to support such a settlement, if made, even to the extent of a reasonable compensation for a right of dower relinquished by her. Blow v. Maynard, 2 Leigh 29; Lewis v. Caperton, 8 Gratt. 148. I think it clear therefore that the claim to this six hundred dollars as part of the interest to the extent of which the estate of Mrs. Powell can under any circumstances be indemnified, cannot be maintained. Indeed if we look at the testimony of Thomas J. Powell, it would appear that this six hundred dollars was in fact his money, though called Mrs. Powell’s, and that *her alleged right was not such as under the circumstances surrounding the parties and the transaction at the time of executing the settlement, can sanction its withdrawal from the fund subject to the debts of Powell, and its appropriation to the benefit of his wife.
But although the claim to this six hundred dollars must be abandoned, I am of opinion that the settlement of the 1st of Januar3r 1839 may and should be sustained to the extent of securing to the estate of Mrs. Powell a just and reasonable compensation for the interests in the real property belonging to her, which were surrendered by the deed of the 1st of April 1841. That a post nuptial settlement in favor of a wife, made in pursuance of a fair contract for valuable consideration, will be held good, is a doctrine supported by abundant authority: And although it may have been made under such circumstances that it must be pronounced fraudulent and void as to the creditors of the husband, yet if the wife have relinquished her interest in property on faith of such settlement, it will be held good to the extent of a just compensation for the interest which she may have parted with; and this though the settlement may have been máde subsequent to the relinquishment. 1 Eq. Cas. Ab. 19; Ward v. Shallet, 2 Ves. R. 16; Prec. in Chy. 113; Cottle v. Fripp, 2 Vern. R. 220; Clerk v. Nettleship, 2 Levinz R. 148; Chapman v. *622 Emery, Cowp. R. 278; Lady Arundell v. Phipps, 10 Ves. R. 139; Jones v. Marsh, Cas. Temp. Talbott 63; Quarles v. Lacy, 4 Munf. 251; Blanton v. Taylor, Gilm. 209; Taylor v. Moore, 2 Rand. 563; Wickes v. Clarke, 8 Paige’s R. 161; Fonbl. Eq. B. 1, ch. iv, § 12 and n. In Harrison v. Carroll, 11 Leigh 476, Judge Stanard says., “It is not questioned by me that the dower interest of the wife may constitute a valuable consideration that will support a post nuptial settlement, and that such settlement, *made in consideration of the surrender of such- dower interest, may be supported against the claims of creditors.” And in Blow v. Maynard, 2 Leigh 29, Judge Carr says, that “if the parting with these contingent interests (such as a jointure, dower, &c.) by the wife will support such settlements, it follows a fortiori, that her parting with her own estate, or making a charge upon it for her husband’s benefit, will support them.-”
It is no valid objection to the settlement that there was no previous agreement in writing between Powell and his wife, nor (the testimony of Thomas J. Powell being rejected) any - competent proof of even a parol agreement between them before the settlement. The agreement - here must be regarded as contemporaneous with the settlement itself. The settlement upon its face purports to be in consideration of her surrendering her interest in the King William land; and her conveyance of her estate in that land is made after the settlement was executed and admitted to record. The-settlement was executed by Mrs. Powell and by Bosher the trustee, as well- as by Thomas J. Powell. It is a very different case from that in which the relinquishment of the wife’s interest has been -first made, and a subsequent settlement sought to be set up. In the latter case distinct proof of a previous agreement may properly ■ be called for. Here when the conveyance of the King William land was. made, it will be fairly and legitimately intended that it was made in reference- to and on faith of the previous settlement made upon the wife professedly in consideration of such conveyance. What need of any specific, independent proof to this point? Res ipsa loquitur. And it would be most unjust to disappoint the wife wholly of the settlement on faith of which she must be supposed to have made her relinquishment, and yet hold her to the latter as valid and obligatory. See Anon. Prec. in Chy. 101.
*It would be a sufficient answer to the charge of fraud on the part of Powell and wife in executing the -deed of settlement, to say, that if there were fraud and she participated in it, still it will not be imputed to her by reason of her cover-ture. Blanton v. Taylor, Gilm. 209; Taylor v. Moore, 2 Rand. 563, 580. But in -truth there is no just room to -attribute any fraudulent purpose on the part of. Mrs. Powell or any complicity in, or knowledge of any such purpose (if such there was) on the part of Thomas J. Powell. The settlement was made avowed^ in consideration of her agreeing to conve3r the whole of the King William land, and such conveyance would of course pass both her own maiden land and her dower right in that of her husband. She subsequently in good faith carries out the agreement by conveying the same to George N. Powell; and the deed recites that a part of the consideration on which it was ■ made was the agreement of George Powell to pay the college debt.
The interest of Thomas Powell in the land was already bound for the debt by the deed of trust of the 20th of April 1836; and George Powell’s agreement to pay it, and his acceptance of the deed for the land with that stipulation on its face, would undoubtedly create an implied equitable lien upon the part which had belonged to Mrs. Powell, which could not be defeated or impaired by the deed of trust executed on the 6th of April 1846. Eor that deed in fact refers to the deed from Thomas J. Powell and wife to George Powell, and describes the King William land (though stated to contain 309 acres) as the same land conveyed b3r that deed: And thus gives full notice of the charge for the college debt. So that in effect by the transaction the se-cura of the college 'debt is increased and improved instead of being diminished or impaired. That the deed recites the payment of five hundred dollars to the grantors as part of the consideration *will not affect the character of the transaction; for whether that were a nominal sum merely, or if a real sum, whether it had been paid or were yet to be paid, the right of the college will not be varied. The whole land remained bound for the whole college debt, for the payment of which George Powell was also bound personally, as security for Thomas Powell; and if the five hundred dollars was yet to be paid to Thomas Powell, he would of course be postponed to the college, and could only come in after its debt had been satisfied.
Nor is there any thing in the circumstance that the deed of settlement describes the King William land as the property of Mrs. Powell, to justify any serious imputation against the transaction. It is true the whole of the tract was not her individual property, but a part of it, one hundred and fifty acres, and much the more valuable portion, being that on which the mansion-house stood, and which would seem to have been in a fine state of improvement, was her maiden land derived from her father; and it might very well happen that the whole might have been called her property b3’- a mistake of the scrivener. Thomas J. Powell had already conveyed his interest in the whole by the deed of 1836, and Mrs. Powell’s deed whenever properly made, would have precisely the -same effect in passing her interest in the whole, whether described as wholly belonging to her, or partly to her and partly to Thomas J. Powell. It can scarcely be supposed that this erroneous description was made will- *623 fullj" and with a premeditated purpose of fraud by enhancing the supposed value of the subject which was to be relinquished in consideration of the settlement. The parties must have known that the facts were too readily ascertainable to render a resort to so flimsy an expedient at all safe or expedient; and I think, looking to all the circumstances, that it will be *fairer to attribute the erroneous recital to carelessness or mistake rather than to any fraudulent contrivance or design.
To the extent therefore of a just compensation to the estate of Mrs. Powell for her maiden land surrendered by the subsequent conveyance, and for her contingent dower interest in the land of her husband (to be estimated as of the date of the transaction), I think the settlement of 1839 may and must be held good. And of this the creditors of Thomas Powell can have no just cause to complain. They are not injured because they get precisely what they would have been entitled to if there had been no settlement, and no relinquishment by Mrs. Powell of her own land, and of her interest in that of her husband. In the latter case her own estate and her dower right would have remained to her, and the just value of these and no more is what she is now to receive under the settlement.
Another and an important question relates to the credit of one thousand seven hundred and five dollars allowed by the decree upon the debt of Thomas and George Powell, as of the 19th of October 1841.
The claim to this credit is sought to be maintained upon two grounds: first, that the appellants should be treated as the purchasers of the King William land at the sale alleged to have been made by Christian in October 1841, and at which it is claimed the property was purchased for them by Christian, at the price of one thousand seven hundred and five dollars, tobe applied as a credit upon their debt; secondly, that Thomas Powell should be regarded as a mere surety for the debt, and that Christian so conducted himself towards George Powell, the real principal as now supposed, as to discharge the surety from the debt either in the whole or at least to the extent of the one thousand seven hundred and five dollars.
*As to the first ground, the objection at once occurs that its effect is to enforce a contract for the sale and purchase of land without any note or memorandum in writing, signed by the party, or any agent for him, in direct contravention of the statute of frauds. It is not pretended that any conveyance was made or any written memorandum of the sale signed by any body. The whole matter rests in parol and upon the testimony of a single witness, that of Thomas J. Powell upon this point being of course inadmissible. Nor is there the slightest proof of any such part performance by delivery of possession or otherwise, as would induce the Court of chancery upon its principles, to take the case out of the operation of the statute. Nor could the wisdom and sound policy of the statute be perhaps better vindicated than in this case. The claim here must be sustained, if at all, upon the testimony of Edwards who speaks of a transaction, that took place upwards of eleven years previously, and of what was said by the different parties at the time. All the information he had at the time was evidently from his own showing, extremely meagre and imperfect, and the subject has been still further obscured by the mists of years since elapsed. The account which he gives is in some respects contradictory, in others, confused and unintelligible, and in all, unsatisfactory; and to receive such evidence to charge a party with the responsibilities of a contract would be fraught with all the mischiefs which it was the very design of the statute to remedy.
The other ground upon which it is sought to sustain this credit is equally untenable. There is nothing to support the pretension of Thomas Powell, that the relations in which he and his surety George Powell stood with respect to the college debt, were changed with the consent of Christian, and that George Powell became the principal debtor while he remained *bound as security merely. On the contrary, in the King William bill filed in 1847 and sworn to by Christian, he treats the debt as one in which Thomas Powell is principal and George Powell the surety, and he assails the deed of trust- to Scott in 1846 as fraudulent, and claims that the. land is then still liable, primarily, to the college debt. In the answer of George Powell, it is not pretended that Christian had assented to any arrangement changing the relations of the parties, or that any thing had been done to exonerate the land' or discharge either Thomas Powell or himself from the debt or any part of it. Nor does he pretend that any such sale had ever taken place as that now alleged to found. the claim to the credit of one thousand seven hundred and five dollars. On the contrary, he impliedly admits that the whole original debt is still owing by both the parties, and he expressly claims that the King William land is still primarily liable to the payment of the whole debt. All this is equally and utterly at war with the pretension now made of a purchase by Christian at a sale made by himself as trustee in 1841, on account of this debt, and with the notion, now brought forward for the first time, that Thomas Powell had been in some way exonerated from the debt. In truth, Christian seems to have done nothing except to give these parties the most liberal and continued indulgence; and if the land was suffered to go to waste while in the possession of George Powell, it was the fault of Thomas Powell and not of Christian. It was Thomas Powell who trusted George Powell: he conveyed the land to him absolutely and placed him in possession. If the property suffered whilst in his possession, Thomas. *624 Powell cannot complain; and if he were as he now alleges merely the security of George Powell, he had the right by a proper proceeding to have had the land sold at any time for his- indemnity. Stephenson v. Tavenners, 9 Gratt. 398.
*1 am of opinion that the appellants . may .very well claim to charge the King William land primarily with the payment of their debt in preference to any of the other creditors secured by the deed of trust of the 6th of April 1846, without in any manner impairing their right to hold Thomas Powell personally responsible for any balance that may remain unsatisfied, and that nothing is shown in the cause to exonerate him or any property which would have been otherwise liable to the appellants’ demand.
And while I am of opinion that this credit of one thousand seven hundred and five dollars mtist be rejected, I .think it would be premature at this time to undertake to pronounce what credit should be given on account of the King William land. The land was sold, it seems, under a consent decree in the King William suit, and was purchased in on account of the college debt at the sum of seventeen hundred and two dollars. This sale appears to -have been made on the 25th of January 1848, but it no where appears that' it has ever been confirmed; and by the terms of the decree the proceeds were, to await the event of the suit. So far as this record discloses, that suit is still pending, and non constat but that this sale maybe disaffirmed and a new sale directed. Nor can we anticipate With certainty that the King William court will direct the application of the proceeds of the sale to’the college debt, although we may think, judging from the record before us, that such application will be right and proper. But neither the trustee nor the creditors named in the deed of trust of 1846, are parties in this cause; and they are the parties to be prejudiced by this application of the proceeds of this land, and whose interest it is to contest it; and for obvious reasons it would be improper to direct that the college debt should be credited by the amount of these proceeds except by a decree which would be binding upon the ^Creditors named -in that deed. The subject of this credit then should await the action of the King William court, unless the appellants shall sooner consent that it may be given.
The defense set up in the answer of Bosher, of a purchase by him of the shares of some of the - heirs of Mrs. Powell, for valuable consideration without notice of any vice or defect in the settlement of 1839, does not appear to have been passed upon by the Circuit court, nor has it been adverted to in the argument here: and as in the view I take of the case, the cause must go back to -the Circuit court, it is not necessary to express any opinion in regard to it at this time. It may be made the subject of proof if the parties shall be so advised, and of further consideration in the Circuit court.
I am of opinion to affirm so much of the decree as declares the deed of settlement of the 1st of January 1839 void as to the appellants, except to the extent of the just value of the interests surrendered by Mary B. Powell, in conveying her maiden land and relinquishing her right of dower in the lands of her husband; and also so much of the same as declares the deed from Thomas J. Powell and wife to George N. Powell of the 1st of April 1841, to be not fraudulent nor void; but in all other respects to reverse the same, with costs to thfe appellants; and to remand the cause • to the Circuit court, with directions further to proceed in the same according to the principles hereinbe-fore declared.
The other judges concurred in the opinion of Bee, J.
Decree reversed.